# M. F. MURRAY, Trustee, Appellant, v. HENRY BEAL, Respondent.

CORPORATIONS—BANKRUPTCY—CORPORATE DEED—DEFECTIVE ACKNOWL-
EDGMENT—EFFECT—CORPORATE RECORD—PAROL EVIDENCE—ADMISSI-
BILITY—SEAL—NECESSITY — BOARD    OF    DIRECTORS — BORROWING
MONEY—AUTHORITY—RATIFICATION — TRUSTEE IN BANKRUPTCY—
RIGHTS—DEED AS MORTGAGE—ENFORCEMENT.

1. Revised Statutes 1898, section 1989, requires the officers of a corpor-
ation executing a conveyance to make oath that they are the officers
named in the instrument, and that they executed it on behalf of the
corporation, and by authority of its directors; and section 1975 de-
clares that every conveyance must be acknowledged and recorded to
operate as notice to third persons, but shall be valid as between the
parties without such acknowledgment or record. The officers of a
corporation executed a deed to defendant to secure a loan, but did not
make oath that they were officers of the corporation, or that they
executed the instrument by authority of the board of directors. *Held,*
that the deed was good as against a trustee in bankruptcy of the
corporate estate.

2. Where a deed executed by the officers of a corporation was delivered
as security for a loan, the fact that it had been imperfectly acknowl-
edged did not render it inadmissible as against a trustee in bank-
ruptcy of the corporate estate.

3. Where the directors of a corporation borrowed money of defendant,
and executed a deed as security, the fact that the corporation kept
no record of their meetings constituted no ground for annulling the
deed at the instance of a trustee in bankruptcy of the corporation.

4. Where the directors of a corporation borrowed money of defendant,
and executed a deed to secure it, but kept no record of their acts,
parol evidence was admissible to show the transaction.

5. Revised Statutes 1898, section 323, provides that it shall not be neces-
sary to use private seals on any instrument in the state. *Held,*
that the fact that a deed executed by a private corporation did not
have a seal attached did not invalidate the conveyance.

6. The directors of a corporation, at an informal meeting, decided to
borrow money from defendant, and to execute a deed on the corporate

Murray v. Beal.

real estate as security, and defenadnt loaned them $1,000 on September 7, 1898, and $800 on October 29, 1898. The money was used by the directors in purchasing goods and erecting new buildings, and, though defendant frequently requested a deed, it was not delivered until December 28. *Held*, that the use of the borrowed money by the corporation, with a knowledge of the facts, constituted a ratification of the acts of the directors in borrowing it.

7. From the time of such ratification of the claim it constituted·an equitable lien on the corporate real estate included in the deed.

8. On September 7, defendant loaned a corporation $1,000, the directors agreeing to secure it by a conveyance of realty. On October 29 a loan of $800 was made on the same terms. The corporation failed to deliver a deed, though frequently requested, until December 28, following. On the fourteenth of March subsequent thereto a petition in bankruptcy was filed against the corporation. *Held*, that the deed was not invalid as a preference, under Bankrupt Act 1898, section 3, as having been made, in violation of such section, within four months of adjudication in bankruptcy.

Decided June 15, 1901.

Appeal from District Court, Seventh District.—*Hon. Jacob Johnson*, Judge.

Action by M. F. Murray, as trustee in bankruptcy of the Golden Rule Cash Store, against Henry Beal. From a judgment in favor of defendant, plaintiff appeals.

Affirmed.

The Golden Rule Cash Store of Ephraim City, Utah, was incorporated and doing business under the laws of the State of Utah in 1898. A board of directors was duly elected and qualified as such. Such board selected from their number and elected the following officers: Ivan J. Olsen, Jr., president, Neils Mortensen, Jr., vice-president, and T. W. Hansen, secretary and treasurer. These persons continued to act as such officers until the concern made·an assignment. No rec-

ord of the proceedings of the board was kept except of the first meeting. On the thirteenth day of February, 1899, the corporation made an assignment, for the benefit of its creditors, to D. W. Anderson and M. F. Murray. The assignment was recorded, and the assignees took possession of the property. On the fourteenth day of March a petition of involuntary bankruptcy was filed against the corporation by a part of its creditors, and it was adjudged a bankrupt on the eleventh day of April, 1899. The appellant M. F. Murray, was elected trustee of such bankrupt estate, and is one of the parties named as assignees. The corporation was in need of money for the purpose of carrying on its business. In pursuance of an arrangement between themselves, and without any formal meeting being called, the directors met at the company's store, and discussed the propriety of borrowing money for the corporation, and it was agreed by them, without any formal resolution by them to that effect, that the president and secretary should borrow $1,000, and secure it on the real estate of the corporation on which its store building was erected. The president and secretary and treasurer thereafter saw defendant, Beal, and one Neilson. Neilson agreed to let them have the money provided Beal would become responsible for it. Thereupon, on or about the seventh of September, 1898, the corporation, by I. J. Olsen and T. W. Hansen, the president and secretary and treasurer, made an oral agreement with defendant, Beal, by which he agreed to obtain for the corporation $1,000 from Neilson, but they were to sign the note to obtain it. In consideration thereof the officers agreed to convey to Beal the real estate in question as security for the repayment of the $1,000 so obtained. At this time the title to the real estate stood on record in the name of Hansen, and had not been conveyed to the corporation owning it, as agreed. In pursuance of such arrangement, the defendant, Beal, in order to obtain said $1,000, gave his note, signed by Olsen and Hansen, for that

amount to Neilson, received the money, and delivered it over to Hansen, as president of the corporation. This money was deposited in the bank to the credit of the corporation, and soon after used by it, with full knowledge of its officers, in payment of debts, and in constructing improvements on the corporate property. On the twenty-ninth day of October, 1898, the officers of the corporation borrowed from the defendant $800 for its use on like authority and security to be given as on the former loan. The $800 was thereafter received and used by the corporation. When the notes matured Beal paid the principal and interest. On the twenty-eighth day of December, 1898, Hansen conveyed the property to the corporation, and, upon the consideration and agreement aforesaid, Hansen and Olsen, as president and secretary and treasurer, conveyed to the defendant, Beal, by warranty deed, the real estate as aforesaid. The official character of the officers was recited in the deed, but the corporation did not attach its seal, nor does it appear it had one. Appellant witnessed and took the acknowledgment of the deed as a notary public. Beal was to hold said property as security for the $1,800 and interest, and reconvey when the debt was paid. The deed was filed for record on the fourteenth day of February, 1899. The acknowledgment to said deed reads as follows: "State of Utah, County of Sanpete. On this twentieth day of December, 1898, personally appeared before me Ivan J. Olsen, Jr., and T. W. Hansen, the president and secretary of the Golden Rule Cash Store, the signers of the above instrument, who duly acknowledged to me that they executed the same. M. F. Murray, Notary Public." The said $1,800 was obtained, and the deed executed and delivered, in good faith, in pursuance of such agreement, and without intent to hinder, delay, or defraud any creditor of the corporation, or to acquire any preference over any creditor. The real estate was valued at $1,800, and the corporation was indebted from between $4,000 and $5,000, and was

in fact insolvent, but Beal loaned the money in the belief that it was solvent. In the assignment Beal was listed as a creditor of the corporation. The money secured from Beal was received and used by the corporation in payment of its debts, in procuring goods to replenish its stock, and in constructing buildings and making repairs on the property, with full knowledge of all the facts. After the money was obtained by the corporation, the respondent often requested the delivery of the deed, as agreed, but through the negligence of the officers, and without any fraudulent intent, it was not executed or delivered to him until December, 1898. This complaint was filed for the purpose of cancelling the deed to the defendant, and for a decree declaring the title of the real estate in the plaintiff, as trustee. The trial court made findings substantially as above, finding the issues in favor of the defendant, Beal, and the plaintiff appeals.

*W. R. Hutchinson, Esq.*, for appellant.

*Messrs. Ephriam Hansen* and *F. A. Sweet* for respondent.

MINER, C. J. (after stating the facts).—1. The appellant claims that the deed of conveyance by the corporation to Beal to secure the payment of the borrowed money was void, because not authorized by resolution in a meeting of the board; that the corporation did not borrow or authorize the board to borrow it, or ratify their acts; that the certificate of acknowledgment thereto was not made and sworn to in compliance with section 1989, Revised Statutes 1898; that the deed was not filed for record until within thirty days prior to the filing of the petition in bankruptcy, and that the corporate seal was not attached to the deed—all of which rendered the deed void as to the appellant. Section 1989, Revised Statutes 1898, reads

as follows: "The certificate of acknowledgment of an instrument executed by a corporation must be substantially in the following form: State of Utah, County of ———. On the ——— day of ———, A. D. ———, personally appeared before me A B, who being by me duly sworn (or affirmed) did say, that he is the president (or other officer or agent as the case may be) of (naming the corporation), and that said instrument was signed in behalf of said corporation by authority of its by-laws (or by resolution of its board of directors as the case may be), and said A B acknowledged to me that said corporation executed the same." Section 1975, Id., reads as follows: "Every conveyance of real estate, and every instrument of writing, setting forth an agreement to convey any real estate, or whereby any real estate may be affected, to operate as notice to third persons, shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such proof, acknowledgment, certification, or record, and to all other persons who have had actual notice." The acknowledgment of the deed given to the respondent by the officers of the corporation was not in compliance with section 1989, which requires the officers executing a conveyance to make oath that they are the officers named in the instrument acknowledged, and that they executed the same as such by authority of the board of directors. The object of the statute was to secure good faith on the part of the officers of a corporation in its behalf, protect the public against their unauthorized acts, and secure the stockholders against the wrongful acts and fraud of the directors, under the presumption that they would perform their duty under oath more faithfully than without it. Schwab v. Milling Co., 60 Pac. 940, 21 Utah 258. The acknowledgment, while not necessarily a part of the deed, was a necessary ingredient in order to admit

it of record, or to admit it in evidence without further proof.
It had reference to the proof of execution, not to the force. of
the deed itself, especially when third parties were not con-
cerned. Gray v. Ulrich, 8 Kan. 112; Devl. Deeds, sec. 464;
sections 1975, 2001, Rev. St. 1898; Hunter v. Watson, 12 Cal.
363, 73 Am. Dec. 543.

As between the parties, and all persons who had actual
notice of it, a deed does not require acknowledgment to render
it valid. Section 1975. Under section 2001, failure to re-
cord a deed will render it void only as against subsequent pur-
chasers in good faith and for a valuable consideration. Hun-
ter v. Watson, 12 Cal. 363, 73 Am. Dec. 543. A deed with-
out any sufficient certificate of acknowledgment, if good as
against a bankrupt, is good against his assignee or trustee.
Branden, Bankr., pp. 436, 435; In re Kansas City Stone &
Marble Mfg. Co., 9 N. B. R. 76, Fed. Cas. No. 7,610; 1 Encyc.
Pl. and Prac., 514, 515. A trustee in bankruptcy represents
the bankrupt estate and the creditors. The acknowledgment
was not sufficient, under the statute, to admit it of record, nor
was its acknowledgment and record, as such, notice to the ap-
pellant, or to subsequent purchasers in good faith, or to third
persons, under sections 2001, 1975. But under section 1975,
it was binding between the parties without such proof of ac-
knowledgment or record, and on all other persons who had
actual notice. Under section 2001, it was void as against sub-
sequent purchasers in good faith for a valuable consideration.
Hunter v. Watson, 12 Cal. 363, 73 Am. Dec. 543. The rec-
ord shows that the deed was signed, imperfectly acknowledged
by the bankrupt, and delivered as security for the prior loan in
question. As such, it was admissible in evidence, when prop-
erly proved. Devl. Deeds, sec. 1136; Gray v. Ulrich, 8 Kan.
112; Rev. St. 1898, sec. 1975.

2. The fact that the corporation kept no books of record
of their meetings was a gross neglect of duty, but.it would be a

reflection on that justice which courts are bound to administer to permit such corporation, or the trustees and successors, to take advantage of such neglect as a means of defeating a claim of an honest creditor, of the justice of which all had actual notice.

3. The objection was made that parol evidence was not admissible to prove the acts of the corporation in the absence of a record of its acts. The general rule is that a party is bound to produce the best evidence, and if the corporation has, by its own carelessness or neglect, prevented a party dealing with it from producing record evidence of its acts, it is his right to resort to such other oral evidence as can be legitimately produced to establish it.

4. It does not appear that any seal was attached to the deed, or that the corporation had a seal. In this State the absence of a seal from such an instrument does not invalidate a conveyance. The statute does not require the use of a seal by a private corporation. Sections 323, 1976, Rev. St. Utah 1898; Wood v. Wheeler, 93 Ill. 153; 2 Cook, Corp. (3 Ed.), sec. 810.

5. The directors of a private corporation can only bind it when they speak through its board of directors. Their unauthorized acts are void unless they are directly or impliedly adopted or ratified by the corporation. The authority to borrow the money from or through Beal on September 7, or to the giving of the deed to secure it on December 28, was not granted by a formal resolution of the board of directors at a regular or special meeting, properly convened, at which a record was kept of its proceedings, as should have been done; but authority was given the president and secretary and treasurer, at an informal meeting held on the seventh of September, at the company's store, to borrow $1,000 in money, and secure its payment by deed of the property in question. That money was borrowed from Beal on the present promise of the officers to secure its payment by deed to the property, which was not ex-

ecuted and delivered until the twenty-ninth of December, and within four months prior to the time of the filing of the petition in bankruptcy. The deed only amounted to a mortgage. The corporation obtained $800 on similar proceedings, on the twenty-ninth of October, which was within four months of the time when the petition in bankruptcy was filed. Both these proceedings were so informal and unwarranted as to invalidate the conveyance to Beal as against the claims of subsequent purchasers in good faith for a valuable consideration, unless it appears that each act for the borrowing of the money by such officers was ratified by the corporation with full knowledge of all the facts, and that such ratification occurred more than four months prior to the filing of the petition in bankruptcy, under section 3 of chapter 541 of the Bankruptcy Law of 1898.

As we have seen, at the time when the assignment was made the assignee and trustee in bankruptcy had full notice that the Beal deed covered the property assigned. Immediately after the $1,000 was borrowed from Beal, on the seventh of September, it was deposited in the bank to the credit of the corporation. It was immediately taken, received, and used by the corporation, and by its officers and directors, with full knowledge that it was acquired from Beal upon the promise by the officers to secure its payment by deed to the real estate in question. Such money was used by the corporation to pay its debts and erect buildings on the corporate property. It was borrowed in good faith, and loaned by Beal without any intent to hinder, delay, or defraud any creditor of the corporation, or to secure any preference over any creditor, more than four months prior to the time of filing the petition in bankruptcy. When the deed was finally executed, on December 28, all the officers and directors had a full knowledge of what was being and had been done, and consented thereto, and retained the money borrowed, and from thence hitherto have never offered to return the same. As a general rule, a private

corporation has power to direct its directors, and the directors have power, in a proper way, to borrow money, and execute a conveyance to secure its payment. So the corporation, by its officers, had power to ratify the acts of the trustees, if no intervening rights interposed. When there are no intervening rights, the ratification inures back to the inception of the transaction ratified; that is, to the date when the money was borrowed and the security was agreed to be given. It was not necessary that there should have been a direct proceeding or resolution of the board of directors to ratify the act. Such ratification could be done indirectly, and by acts of recognition or acquiescence, or any act inconsistent with a repudiation or disapproval. In re Kansas City Stone Co., 14 Fed. Cas. 128 (No. 7,610); Scott v. Methodist Church, 50 Mich. 528, 15 N. W. 891; Sherman v. Fitch, 98 Mass. 59; 4 Thomp. Corp. secs. 4624, 5304, 5286; Bank v. Weaver (Cal.) 31 Pac. 160; Tayl. Corp. (3 Ed.), secs. 212-214; Moyle v. Society, 16 Utah 69, 50 Pac. 806; Witter v. Flouring-Mill Co., 78 Wis. 543, 47 N. W. 729. In 4 Thomp. Corp., section 4624, it is said: "If the person dealing with the corporation is driven to make proof of the authority of its president to act for it and bind it in the particular transaction, then there is a principle that this proof need not be made in the form of a resolution of the board of directors, duly entered upon the records of the corporation, but that the act of the directors may be shown by an oral vote, and may be otherwise proved by parol, and often, equally well, by circumstantial evidence." In Tayl. Corp. (3 Ed.), section 212, it is said: "A formal ratification is not requisite. If there is no express ratification, by the action either of the body corporate, or of superior agents having authority, whether or not an act has been ratified is a question of fact for the jury. And, in general, it may be said that whether the alleged ratification be that of the body corporate, or of superior corporate agents, it may be proved by continued acqui-

escence on the part of the persons competent to ratify, when knowledge of the facts may be shown, reasonably inferred, or presumed to have been had by the persons acquiescing.    Thus, if the president of a manufacturing company, in excess of his authority, executes a mortgage, the mortgage will be binding on the company if the directors who could competently have authorized it knowingly acquiesce for a considerable time." By receiving the money obtained on the deed on September 28, and using it to pay the corporate debts and other corporate purposes, with a knowledge of all the facts, the corporation at that time ratified the acts and agreements of its directors in borrowing the money.    From the time of such ratification such claim became an equitable lien upon the real estate in question, as binding upon the bankrupt and his estate as if secured by a mortgage upon the premises.    The subsequent execution and delivery of the deed to secure the debt in December was also a ratification of the former act, in so far as the directors and the corporation were at that time legally capable of ratifying it under the provisions of the bankrupt act.

6. It is also very zealously insisted by the able counsel for the appellant that the mortgage deed was given at a time when the corporation was insolvent, with intent to create a preference in favor of the respondent, and within four months from the time of the filing of the petition in bankruptcy, and that, therefore, the deed was void under the provisions of section 3 of the Bankrupt Act of 1898, and that no legal ratification could occur.    The record shows that the $1,000 was obtained September 7, and that the $800 was obtained October 29. The latter sum was received within four months from the time of filing the petition in bankruptcy, on February 13, 1899.    The respondent had made frequent requests for a delivery of the deed after he had paid over the $1,000, but through the neglect or oversight of the officers, and without any intent to de-

fraud any creditor or to obtain any preference to the respondent, the deed was not executed and delivered to Beal until December 28, 1898. No fraud is shown in connection with the transaction. Under the facts, is the respondent entitled to hold the security which he claims by deed upon the property of the bankrupt for the $1,000 loan made in September, and the $800 loan made in October? It appears to us that the $1,000 loan was made and money accepted and used by the corporation, and the acts of directors ratified it September 7, 1898—a time more than four months prior to the time of filing the petition in bankruptcy, and at a time when the corporation had power to ratify acts of its directors. Under the considerations stated, the author of the misfortune should not himself escape the consequences of his act, and cast the burden upon another. The party or its representative, who appointed the directors and clothed them with power which enabled them to obtain the $1,000 for the corporation from an innocent party, and thereafter ratified their acts, ought to suffer, rather than an innocent party. The conclusion follows that the deed relied upon as security should be treated and decreed to be security for $1,000 and interest borrowed in September, and as the debt of the corporation to that extent, and that the appellant and trustee of the bankrupt corporation is and should be concluded by it to the extent to which it would be binding upon the corporation had not the petition in bankruptcy been filed. To this extent the deed, which, in effect, is simply a mortgage for the payment of money, may be enforced by the respondent as a mortgage against the appellant, the corporation, and the bankrupt estate to the extent of $1,000 and interest from the date of the note. The deed should be and is decreed to be a mortgage to secure the payment of such loan to the respondent. It is held in Sabin v. Camp (C. C.), 98 Fed. 974, that "a transfer of property to a creditor by a debtor within four months prior to his adjudication as a bankrupt does

not constitute a preference under the bankruptcy law, in the absence of fraud, where the transfer was made pursuant to the terms of a prior contract, under which the transferee advanced the money with which the property was acquired, reserving a lien thereon."

7.   The above rule will not extend to cover the $800 borrowed from the respondent on October 29, 1898.   The corporation could not ratify this act of the directors until after the money was obtained.   This money was obtained within the four months fixed by the bankruptcy act prior to February 13, 1899.   While it is true that ratification relates back to the inception of the transaction, and has a complete retroactive effect, and a ratified act is to be treated as if originally authorized by the principal—that is, by relation of law the act of one is given the effect of the act of another—yet the law will not permit a wrong by making valid an invalid act or defeat the rights of others.   In other words, the law will not permit a ratification of the acts of an agent which will defeat the intervening rights of third parties.   Therefore the above doctrine will not apply to third parties, strangers to the transaction, or, in this case, to the bankrupt estate or other creditors.   The act of ratification, to relate, must take place at a time and under circumstances by which the ratifying party might himself have lawfully done the act which he ratifies.   The twenty-eighth day of December was within the period fixed by the bankruptcy act wherein the corporation could do no act in fraud of the rights of its creditors or assigns, and the ratification by the corporation at that time of the acts of its officers, in borrowing the $800 on October 29, and in giving the deed to secure its payment, would be within the prohibitory provision of the bankruptcy act, and, if permitted, would defeat the intervening rights of the trustee in bankruptcy, and the creditors he represents, for whose benefit the ratification claimed will not be permitted to relate so as to bind the ap-

pellant and the estate.   In McCracken v. City of San Fran-
cisco, 16 Cal. 591, Fields, C. J., said:    "It follows, also, from
the general doctrine, that a ratification is equivalent to pre-
vious authority; that a ratification can only be made when the
principal possesses at the time the power to do the act ratified.
He must be able, at the time, to make the contract to which by
his ratification he gives validity.   The ratification is the first
proceeding by which he becomes a party to the transaction, and
he can not acquire or confer the rights resulting from that
transaction, unless in a position to enter directly upon a simi-
lar transaction himself."   This doctrine is approved in Re
Kansas City Stone Co., 14 Fed. Cas. 128 (No. 7610).   Under
section 3 of the bankruptcy act, the loan of the $800, and the
deed given to secure that sum, and such ratification of that
loan as was made or attempted on October 29, was a prefer-
ence, and, therefore, a legal fraud against the creditors of the
corporation, because the whole transaction occurred within
four months prior to February 13, 1899, when the petition
in bankruptcy was filed.   In the case last quoted it is held that
"where an officer of a corporation, without authority, executed
a deed of trust of its property as security for a negotiable in-
strument, more than four months prior to commencement of
proceedings in bankruptcy, and his act is afterwards ratified by
the corporation, but within the four months prior to com-
mencement of the proceedings, the validity of the deed must
be determined by the circumstances existing at the time of the
ratification, and not by those of the time of the original execu-
tion."   In re Wright (D. C.), 96 Fed. 187; Williams v. Clark,
47 Minn. 53, 49 N. W. 398; Burdick v. Jackson, 7 Hun, 488;
Douglass v. Vogeler (D. C.), 6 Fed. 53; Bush v. Boutelle, 156
Mass. 167, 30 N. E. 607, 32 Am. St. Rep. 442; Head v. Horn,
18 Cal. 212.   We are of the opinion that the court erred in
allowing the claim for $800 and interest, loaned in October,

1898, as a part of the consideration for the deed.    The decree and findings should be modified so as to reject the claim for the $800.

Errors are assigned upon other questions, but as they are not discussed in the brief of counsel, and are necessarily subordinate to the questions passed upon, we have refrained from a discussion of them.    The judgment of the district court should be modified in accordance with this opinion, and as modified affirmed; costs of both courts to be equally divided between both parties.

*Baskin* and *Bartch, JJ.*, concur.

### ON REHEARING.

### (June 28, 1901.)

PER CURIAM.—On the former hearing of this case, this court held that $1,000 was obtained from Beal, the respondent, on the seventh day of September, and that $800 was thereafter obtained from him on the twenty-ninth day of October, 1898, for the benefit of the bankrupt corporation; that the latter sum, having been obtained within four months from the time of the filing of the petition in bankruptcy, should be rejected, under the provisions of the bankrupt act.    In the respondent's brief it was stated that the petition in bankruptcy was filed February 13, 1899, and this date was inadvertently taken by this court as the date of the filing of said petition.    Upon a rehearing of the case, we find that such petition in bankruptcy was not filed until the fourteenth day of March, 1899, being more than four months after the $800 was obtained by Beal for the corporation, and therefore the reason given in the former opinion for the rejection of the $800 claim is not well founded, and for that reason a rehearing was granted.    Upon further examination, we find that on

the twenty-ninth day of October, 1898, the corporation, through its directors, obtained from Beal $800 for its use, and deposited the same in a bank to its credit, and soon thereafter, and more than four months prior to the time of the filing of the petition in bankruptcy, used said money, with knowledge of the facts, for the purpose of paying its debts, and in constructing improvements upon its real property; that at the time said money was obtained it was agreed that Beal should be secured therefor by a deed of the real estate; that by using the money so obtained, with knowledge of the facts, the corporation ratified the acts of its directors in obtaining it, and is chargeable with that sum of money, with interest, in addition to the $1,000 granted by the former opinion. The opinion and order heretofore filed should be modified in accordance with the above facts.      The deed executed by the corporation to Beal on the twenty-ninth of December, 1898, for the purpose of securing the money borrowed, and interest, should be treated and decreed to be a mortgage to secure the payment of the sum of $1,000 and interest, borrowed from Beal in September, 1898, and for the further sum of $800 and interest, borrowed in October, 1898, and the appellant and trustee of the bankrupt corporation is and should be concluded by it. To this extent the deed may be enforced as a mortgage for the payment of $1,800 and interest, so borrowed, against the appellant and said bankrupt corporation.      With this view of the case, the judgment and decree of the district court is affirmed, with costs; and it is so ordered.