ALASKA & CHICAGO COMMERCIAL CO. v. SOLNER.

(Circuit Court of Appeals, Ninth Circuit.   June 6, 1903.)

No. 922.

1. RESCISSION OF CONTRACT—CONDITIONS PRECEDENT—RESTORATION OF CONSIDERATION RECEIVED.

A bill filed on behalf of a corporation for the cancellation of a deed to real estate and to recover the value of personal property sold and transferred to defendant at the same time, on the ground that the sale was unauthorized by the corporation, must show a tender back of the consideration received, or at least contain an unequivocal offer to restore the same; and an offer to credit the amount on any judgment recovered against defendant is wholly insufficient.

2. SAME—UNAUTHORIZED SALE BY AGENT OF CORPORATION—RATIFICATION BY ACQUIESCENCE.

The secretary of an Illinois corporation, having express authority to act for it in the management of its business and to appoint other agents with like powers, sold to defendant certain real estate and personal property owned by the corporation in Alaska, executing conveyances therefor in the name of the corporation. He received the consideration, which was applied to the uses of the corporation. He then left Alaska, delegating his powers by a power of attorney to the vice president, who, within a few days, commenced a suit in equity in the name of the corporation to recover the real estate and the value of the personal property, alleging want of authority in the secretary to make the sale. An amended bill, filed a year later, alleged full knowledge of the transaction on the part of the corporation, but it was not shown thereby, nor on the subsequent trial, that the directors had ever taken any action in disaffirmance of the sale, or authorized the return of the purchase money. On the contrary, it appeared affirmatively that they had neither authorized nor ratified the action of the vice president in commencing the suit. Held, that he had no authority to disaffirm the action of the secretary on behalf of the corporation, and that the directors, by failing to take any action, must be presumed to have acquiesced in the sale, and a ratification would be inferred.

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

Charles F. Hanlon and O. D. Cochrane, for appellant.
Bruner Bros. and Elwood Bruner, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is a suit in equity to set aside and cancel certain conveyances of real estate situate in Nome, Alaska, which were executed by William J. Bauerle, and delivered to appellee, and to recover damages for $15,000. Did the court err in dismissing the bill and rendering judgment for the defendant? What are the facts?

Appellant is a corporation organized and existing under and by virtue of the laws of Illinois, and engaged in the merchandise business at Nome, Alaska. It owned two lots, with buildings thereon, in which it had a stock of merchandise and groceries. The value of the real estate is alleged to be $10,000, and of the stock of merchandise $15,000. In the answer it is alleged that the real estate is of the value of only $4,000, and the merchandise of the value of $4,000, and no more. The question as to the value of the property need not be discussed. It is proper, however, to say that there was as much testimony offered upon this point to sustain the averments in the answer as there was to sustain the averments in the complaint.

From the record it appears that on March 17, 1901, a meeting of the board of directors of appellant was held, and the following resolution adopted:

"Whereas, William J. Bauerle, our present secretary and treasurer, is about to go to Nome for the purpose of investigating and regulating the affairs of his company: Therefore it is resolved, that full power be, and the same is hereby, vested in said William J. Bauerle to revoke any and all powers of attorney that may have heretofore been given by this company, and to appoint in the name of this company such attorney in fact for the purpose of managing the affairs of this company and exercising such other powers as are mentioned and conferred in a certain power of attorney heretofore granted to Paul Heinze, and also in a certain power of attorney heretofore granted to Herman Heinze, as in his judgment he may deem best. * * * Said William J. Bauerle is also authorized, in the name of this company, to commence suits or actions at law or in equity or otherwise, as to him may seem best. * * * He is also authorized to remove all officers of this company, and to appoint new officers, and in general to do everything which may be proper or needful in the successful management of said company's affairs."

Bauerle arrived at Nome about the 1st of August, 1901, and immediately took charge and management of appellant's business. The affairs of the corporation were not found to be in a prosperous condition. It owed the Bank of Cape Nome about $2,300 (of which bank appellee was the cashier and general manager). Bauerle was dissatisfied with the situation, and decided to close out the business of the corporation. Herman Heinze, who had been the agent of the corporation, and was its vice president, made no objection to the sale, but manifested a desire to purchase the property for himself. He informed Solner that Bauerle had offered him the whole property for $5,000, and applied to Solner for a loan of that amount of money to enable him to buy the property. The loan was declined. Bauerle then called upon Solner, and offered him the property for $5,000. The property was examined and purchased by Solner for $5,000. Bauerle received the money, and then paid the debt due the bank. On August 17th Bauerle executed deeds for the real estate and a bill of sale for the personal property, and in the presence of Heinze put

Solner in possession thereof.  The title to one of the lots stood in the name of appellant, and the title to the other lot was in the name of William J. Bauerle, but, as a matter of fact, known to Solner, it was simply held in trust for the corporation.  The deed to one lot was executed and signed, "The Alaska and Chicago Commercial Co., [Seal] per William J. Bauerle, [Seal] Sec., Treas. & Mgr."  The other deed was signed by William J. Bauerle.  Both deeds were witnessed by H. A. Day and Herman Heinze.  On the day the deeds were executed, an agreement was drawn up between William J. Bauerle, the party of the first part, and N. B. Solner, the party of the second part, as follows:

"That whereas, the said party of the first part has this day made, executed and delivered to said party of the second part, certain conveyances of real estate and personal property, belonging to the Alaska and Chicago Commercial Company, a corporation of the State of Illinois, which conveyances are somewhat questionable for want of sufficient authority on the part of said William J. Bauerle to execute the same for and on behalf of said corporation: Said party of the first part hereby agrees, in consideration of the acceptance of said conveyances by said party of the second part in the transaction this day closed, to attend to the proper execution and delivery of deeds of conveyances by said company in due and proper form to the real estate; on or before October 1st, 1901. * * *

"Witnesses:                              William J. Bauerle.  [Seal.]
        "Herman Heinze.
        "H. A. Day."

The testimony shows that all of the transactions between William J. Bauerle and appellee were conducted openly, under a knowledge of all the facts.  The good faith of the transactions as between them is not questioned upon this appeal, although alleged in the complaint to be fraudulent as against the corporation.  From the evidence there is no "room or reason" to believe that any fraud was committed.  The argument of appellant is directed solely to the point of "want of authority" on behalf of William J. Bauerle to execute the deeds and make the sale of the personal property.  A few days after the transfer of the property Solner sold the personal property to one Shirk for the sum of $4,000.  Mr. Heinze asked Solner to deed the property to him under the promise that he would pay the $5,000 within a year. He never made any offer on behalf of the corporation, nor did he, on behalf of the corporation, make any demand for the return of the property.  On the 27th day of August, 1901, William J. Bauerle, by virtue of the power given him in the power of attorney from appellant, bearing date May 17, 1901, substituted and appointed Herman Heinze "to do, perform, and execute every act and thing which I could do in, by, and under the same, as hereinbefore enumerated, as well for me as being the true and lawful attorney and substitute of the said Alaska and Chicago Commercial Company, hereby ratifying and confirming all that the said attorney and substitute hereby made and appointed shall lawfully do or cause to be done in the premises by virtue hereof and of the said letter or power of attorney," and a few days thereafter departed from Nome.  On September 5, 1901, Heinze commenced this suit on behalf of appellant.  The whole case, so far as appellant is concerned, rests upon the testimony of

Herman Heinze. The record shows that appellee sought to obtain the testimony of the officers of appellant, especially of William J. Bauerle, the secretary, treasurer, and managing agent thereof, and of Michael Bauerle, the president and one of the principal stockholders thereof; but without avail. Mr. Heinze, upon his examination in chief, was asked if he had ever received any communication from the board of directors of appellant since the commencement of the suit, and replied that he had not. The tender only applied to the real estate, as the stock of merchandise had been disposed of by Solner prior to the commencement of the suit.

Touching the matter of tender, we think the record shows, by a preponderance of evidence at least, that appellant never made any tender of the amount paid by Solner before the commencement of the suit, or at any time thereafter. On his examination on behalf of appellant Mr. Heinze, in reply to questions, answered as follows:

"Q. Mr. Heinze, did you at any time prior to the commencement of this action offer to repay to Mr. Solner the amount of money which he had paid to Mr. Bauerle in this transaction? A. Yes, sir. * * * On the 19th of August, 1901. Q. Immediately after the sale? * * * A. The sale was made Saturday, and I offered this on Monday. Q. State what occurred at that time. A. Well, Mr. Solner came in—in the office of the store building—and I made out a line on a scrap of paper, and I said, under the circumstances the sale was made, I offered to pay him the $5,000 back. Q. What did he say? A. He turned right short off, and said, 'No, I am going to keep it now.' "

On his cross-examination, in reply to the question, "How did you make the offer?" he said:

"I called Mr. Solner in the office behind the partition in the store. * * * I told on that paper that I am able to raise $5,000 and pay him the money back."

This testimony falls far short of establishing the fact that the so-called tender was made on behalf of the appellant. It implies an offer on behalf of Heinze. He does not pretend that he got the money—$5,000—from the corporation. That it was an offer made on his own behalf is testified to by Mr. Solner:

"Q. Has any portion of that [money] ever been offered to be returned to you by any agent of this company? A. No, sir. Q. Has any [one] offered to return you any portion of that money? A. Mr. Heinze, I think, asked me if I would deed back the property to him if he would pay $5,000 within a certain time—I think it was a year; I am not positive as to that. I do not remember what he said. At any rate, he asked me if I would deed the property to him; * * * if I would turn the property over to him upon the payment of $5,000 within a certain time; but I do not remember what that time was. Q. Well, did he ever make you any offer on behalf of the company? A. No, sir. Q. Did any one at any time ever make any offer to return any portion of the $5,000 on behalf of the Alaska and Chicago Commercial Company? A. No, sir. Q. Was there any protest made by any person on behalf of the company to this sale prior or at the time of making the sale? A. No, sir. Q. Did Herman Heinze make any demand upon you prior to the commencement of this action for a return of the property? * * * ₁A. No, sir. Q. Did he at any time, on behalf of the company, demand a return of the property? A. No, sir. Q. Did you ever write to the corporation with reference to the sale? A. Yes, sir. Q. Have you ever received any reply from them? A. No, sir."

Mr. Heinze was called in rebuttal, and repeated his testimony in regard to the offer, and upon his cross-examination he was asked as to whose money it was that he made the offer with.

"A. It was mine. I got the money from my brother-in-law. * * * Q. Did it belong to the corporation? A. It did not belong to the corporation. * * * It belonged to me. Q. Did the corporation authorize you to borrow this money from anybody? A. It did not. I acted as for the company at the time in good faith. I thought it was my duty. I knew there was something not right when the deeds were signed."

Appellant contends that in a suit of this character a tender before suit is not necessary; that an offer in the bill to make the tender is all that is required. The authorities are not uniform upon this point, but conceding, for the purposes of this opinion, that appellant's contention, as a general proposition, is correct, yet it is apparent that the offer as made in the bill is wholly insufficient. The original bill of complaint filed September 15, 1901, did not contain any averment offering to return the purchase price of the property. The first amended bill, filed September 2, 1902, did not make a sufficient offer. In the second amended bill, filed at the close of the testimony, the complainant alleged:

"That prior to the commencement of this action and subsequent to the alleged purchase above mentioned the plaintiff offered to repay and tendered to the defendant the said sum of $5,000 in legal tender money of the United States, which offer of repayment and tender the said defendant then and there refused to accept, and at all times subsequent thereto has so refused, and now refuses, to accept, and that the plaintiff at all times since said tender and since said alleged sale has been ready and willing, and has offered, and hereby offers and tenders, to defendant a credit of the amount paid by said defendant for said property, to wit, the sum of $5,000, with legal interest thereon, may be allowed as a credit in any judgment rendered herein."

This offer was not a sufficient tender. It was not absolute. Moreover, it was not bona fide. It was neither authorized nor sanctioned by the corporation, and must be treated solely as the act of Heinze, made without authority. In any event, it was only a conditional tender, depending entirely upon a judgment being rendered in favor of the corporation for damages. The tender must be without qualifications or conditions.

In Kelley v. Owens, 120 Cal. 502, 507, 47 Pac. 369, 370, 52 Pac. 797, the court said:

"It is undoubtedly the general rule that there can be no rescission of an executed contract upon the ground of fraudulent misrepresentation without restoration, before suit by the party seeking to rescind, of everything of value which he had received from the other party under the contract, or a bona fide offer to restore."

He who seeks equity must do equity. 18 Ency. Pl. & Pr. 829, and numerous authorities there cited.

The case does not depend solely upon the objections urged to the tender, although that was the only ground stated by the court for dismissing the bill of complaint. The fact that the deeds were executed by Bauerle to Solner without any authority from the directors of the corporation does not make the transactions between them void. The deeds were voidable, not void. The corporation might ratify

the act of its agent, or it might disapprove of it. The board of di-- rectors did not authorize the commencement of this suit. Heinze had no more authority to bring this suit than W. J. Bauerle had to. execute the deeds. The sales were made and deeds executed August 17, 1901, and the suit brought September 5, 1901. No orders were ever given and no action ever taken by the corporation either to af-- firm or disaffirm the sales, to bring or not to bring the present suit. The record shows clearly that Heinze instituted the suit of his own: motion. He was the vice president of the corporation, and acted' upon his own judgment. His act in bringing the suit has never been ratified by the corporation. The corporation never authorized him to demand possession of the property, and never authorized him to. make a tender to Solner of the amount of money he had paid for the property. The amended complaint, filed more than one year after the suit was brought, alleges a full knowledge of the sale upon the part of the corporation; but there is no averment therein tending. to show any disaffirmance thereof by the corporation. In Indianapo-- lis Rolling Mill v. Railroad, 120 U. S. 256, 259, 7 Sup. Ct. 542, 544,. 30 L. Ed. 639, in discussing the direct question here involved, the court said:

"The rule of law upon the subject of the disaffirmance or ratification of the acts of an agent required that, if they had the right to disaffirm it, they should do it promptly, and if, after a reasonable time, they did not so disaffirm it, a ratification would be presumed. In regard to this it appears that the board, when notified of what had been done by their agents, did not disaffirm their action at that time, but that the act or resolution of disaffirmance was passed about two years after notice of the transaction, and that, if the suit brought in this case can be considered as an act of disaffirmance, it came too late, as it was commenced some six months after they had knowledge of the release. As was stated in the somewhat analogous case of the Twin-Lick Oil Co. v. Marbury, 91 U. S. 592, 23 L. Ed. 328, 'the authorities to the point of the necessity of the exercise of the right of rescinding or avoiding a contract or transaction as soon as it may be reasonably done, after the party, with whom that right is optional, is aware of the facts which gave him that option, are numerous. * * * The more important are as follows: Badger v. Badger, 2 Wall. 87 [17 L. Ed. 836];. Harwood v. R. R. Co., 17 Wall. 78 [21 L. Ed. 558]; Marsh v. Whitmore, 21 Wall. 178 [22 L. Ed. 482]; Vigers v. Pike, 8 Cl. & Fin. 650; Wentworth v. Lloyd,. 32 Beav. 467;. Follansbe v. Kilbreth, 17 Ill. 522, 65 Am. Dec. 691.'"

See, also, Gold Mining Co. v. National Bank, 96 U. S. 640, 24 L.. Ed. 648; Railway Co. v. Keokuk Bridge Co., 131 U. S. 371, 381, 9 Sup. Ct. 770, 33 L. Ed. 157; Fitzgerald Const. Co. v. Fitzgerald, 137 U. S. 98, 109, 11 Sup. Ct. 36, 34 L. Ed. 608; Hoyt v. Latham,. 143 U. S. 553, 567, 12 Sup. Ct. 568, 36 L. Ed. 259; Alsop v. Riker, 155 U. S. 448, 460, 15 Sup. Ct. 162, 39 L. Ed. 218.

In 2 Morawetz on Corporations, § 618, the author says:

"It is an elementary principle of the law of agency that a person on whose behalf an act was done by another without authority under an assumed agency may adopt and thereby ratify the act. And after such ratification the act will be binding upon the party on whose behalf it was done to the same extent as if it had been performed in pursuance of a previous grant of authority."

When Bauerle executed the deeds he acknowledged that his authority to do so might be questioned, and he believed that his acts

would be ratified. He was an officer of, and authorized to manage the business of, the corporation. He assumed the responsibility of making a sale of the property, and from a portion of the proceeds paid certain debts of the company. The corporation received and applied the proceeds without making any objection to the sale. It must be assumed from his acts and conduct, in the absence of any showing to the contrary, that he communicated all the facts to the corporation. With knowledge of the facts, the corporation did nothing? It neither actively affirmed nor disaffirmed the transaction. When the entire testimony in this case is examined, we are of opinion that it must be presumed by the silence and acquiescence of the corporation that it was satisfied with the act of its secretary and treasurer, and for the failure within a reasonable time to disavow his acts it must be held to have ratified the same. It could not play both hot and cold at the same time, and wait to see what would be the result of the suit brought by Heinze. Equity and good conscience required that it should act promptly in the premises, and its assent may be implied from silence or from failure to act, or it may be inferred from circumstances. Leggett v. Mfg. Co., 1 N. J. Eq. 541, 23 Am. Dec. 728, 738; Choteau v. Allen, 70 Mo. 290, 325; First National Bank v. Kimberlands, 16 W. Va. 555, 581. It need not be shown by direct evidence that the acts of the agent were expressly approved by the board of directors, "but," as was said in the case last cited, "such ratification may be inferred from their accepting the benefits of the act or contract; as, if under the contract so made by the president or other officer money is to be paid to the corporation, and it is received by the corporation, and applied to their use, even without the knowledge of the directors, if it is not returned when it becomes known to the directors that it has been applied to their use, such conduct would be a ratification of the contract of such president or other officer." In any view that may be taken of this case, either legal or equitable, (it follows that the action of the court in dismissing the bill must be sustained.

The judgment of the District Court is affirmed, with costs.