McCARTNEY et al. v. CLOVER VALLEY LAND & STOCK CO.

(Circuit Court of Appeals, Eighth Circuit.   May 5, 1916.)

No. 4496.

1. BROKERS ⬡43(3)—CONTRACTS—"NOTE OR MEMORANDUM IN WRITING."

Correspondence relating to the employment of a broker to effect a sale of land is a sufficient "note or memorandum" of the contract of employment to satisfy Civ. Code Cal. § 1624, declaring that an agreement authorizing a broker to sell land for compensation is invalid unless in writing, or some note or memorandum thereof be in writing.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 44; Dec. Dig. ⬡43(3).

For other definitions, see Words and Phrases, First and Second Series, Memorandum.]

2. BROKERS ⬤⟿43(3)—COMMISSION CONTRACTS—CORRESPONDENCE.

Where by correspondence between brokers and its treasurer a corporation disposed of land, the correspondence, though signed by the treasurer individually, having been submitted to the other office holders, expressed the contract between the parties.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 44; Dec. Dig. ⬤⟿43(3).]

3. FRAUDS, STATUTE OF ⬤⟿116(5)—AGENCY.

Civ. Code Cal. § 2309, declaring that oral authorization is sufficient for any purpose, except that authority to enter into a contract required by law to be in writing can only be given by an instrument in writing, does not apply to an officer of a corporation and require that such officer's authority to contract with a broker for the sale of corporate realty for compensation shall be in writing, for an officer is not a mere agent of the corporation.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 255, 256, 260; Dec. Dig. ⬤⟿116(5).]

4. EVIDENCE ⬤⟿158(26)—PAROL EVIDENCE—ADMISSIBILITY.

Authority from the board of directors to an executive officer to execute a deed or mortgage for a corporation may be shown by parol.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 507–513; Dec. Dig. ⬤⟿158(26).]

5. CORPORATIONS ⬤⟿426(4)—RATIFICATION—WHAT CONSTITUTES.

Despite Civ. Code Cal. § 2310, declaring that ratification can only be made in the manner that would have been necessary to confer an original authority, the board of directors of a corporation, where they encouraged the treasurer to negotiate with a broker endeavoring to exchange corporate realty, accepted the results of the broker's employment, and carried out the exchange with knowledge, ratified the employment so as to render the corporation liable for the broker's compensation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1702, 1710, 1712; Dec. Dig. ⬤⟿426(4).]

6. BROKERS ⬤⟿49(1)—COMMISSIONS—RIGHT TO.

Though brokers who effected an exchange of lands for a corporation had, previous to their employment, received a prospectus by the corporation reciting that no compensation would be paid except after written contract with the company, they are entitled to compensation under an executed contract; for after their services were rendered and accepted the law imposed the obligation to pay.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 70; Dec. Dig. ⬤⟿49(1).]

7. BROKERS ⬤⟿69—COMPENSATION—RIGHT TO.

Where a broker without any agreement to dispose of property on set terms rendered services in effecting an exchange of property, the owner who accepted his services is liable for reasonable compensation; the case being different from where the owner sets his price when the broker must produce a purchaser ready, able, and willing to buy at the price fixed, to claim commission or compensation.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 55; Dec. Dig. ⬤⟿69.]

In Error to the District Court of the United States for the District of Utah; J. A. Marshall, Judge.

Action by H. M. McCartney and others against the Clover Valley

Land & Stock Company. There was a judgment for defendant, and plaintiffs bring error. Reversed and remanded.

E. B. Critchlow, of Salt Lake City, Utah (Pierce, Critchlow & Barrette and W. J. Barrette, all of Salt Lake City, Utah, on the brief), for plaintiffs in error.

A. L. Hoppaugh, of Salt Lake City, Utah (George Y. Wallace, Jr., and Dey, Hoppaugh & Fabian, all of Salt Lake City, Utah, on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and AMIDON and VAN VALKENBURGH, District Judges.

AMIDON, District Judge. The plaintiffs are real estate brokers residing at Los Angeles, Cal., and the defendant is a Utah corporation owning a large ranch in the state of Nevada. Several years prior to the transactions here involved, the company had sold its personal property and ceased active business. The only property which it owned was the ranch, which it was desirous of selling or exchanging for productive property. It was a close corporation consisting in the main of four controlling stockholders. Its president was old and in poor health so that he was unable to perform the duties of his office. The chief executive officer was a Mr. Wallace, who was treasurer and a director of the company. Its correspondence in the main emanated from and was addressed to him at his private office.

The plaintiff, McCartney, in the month of February, 1913, learned of the desire of defendant to sell or exchange its ranch. At the same time he learned of a party by the name of Harris who owned a large office building in Los Angeles which he was desirous of exchanging for ranch property. Thereupon McCartney opened correspondence with Mr. Wallace seeking to act as a broker in effecting the exchange. The correspondence was voluminous and continuous between Mr. Wallace and Mr. McCartney from that time until the exchange was finally consummated. There was no separate formal contract distinct from the correspondence employing plaintiffs as brokers. It is also true that all the letters were addressed to, and signed by, Mr. Wallace personally. The name of the corporation was not used, nor was Mr. Wallace's official position attached to his name in any of the letters. After the exchange was effected, plaintiffs demanded their commissions, and, upon the refusal of the company to comply with the demand, the present suit was brought seeking to recover 5 per cent. upon the value of the property exchanged. The case was tried to the court without a jury, a jury having been waived in writing. The court made findings of fact and conclusions of law and entered judgment dismissing the complaint. The plaintiffs requested findings of fact in their favor, and saved exceptions to the refusal of the court to make such findings as well as to the findings actually made. It is conceded that the contract is controlled by the laws of California.

The trial court based its decision upon the following statutes of that state (Civ. Code):

"Sec. 1624. The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be

charged, or by his agent: * * * (6) An agreement authorizing or employ-ing an agent or broker to purchase or sell real estate for compensation or a commission."

"Sec. 2309. An oral authorization is sufficient for any purpose, except that authority to enter into a contract required by law to be in writing can only be given by an instrument in writing.

"Sec. 2310. Ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof."

The trial court ruled that plaintiffs failed to make out a case upon two grounds: First, that there was no contract or note or memoran-dum thereof in writing subscribed by the defendant or by its agent, employing plaintiffs as brokers. Second, that Wallace, as agent of the corporation, had no written authority empowering him to employ the plaintiffs.

[1] We think the decision was wrong upon both grounds. The cor-respondence is an ample note or memorandum of the contract employ-ing plaintiffs to satisfy section 1624 of the California Code. It has been the uniform holding of the courts of that state that this statute does not require any formal contract. The "writing" which it de-mands may be embodied in letters and telegrams. All that is neces-sary is that the fact of employment be expressed in writing, signed by the party to be charged, or by his agent. Toomy v. Dunphy, 86 Cal. 639, 25 Pac. 130, 131; Kennedy v. Merickel, 8 Cal. App. 378, 97 Pac. 81; Naylor v. Adams, 15 Cal. App. 548, 115 Pac. 335. These de-cisions are in accord with the general rule on the subject in this coun-try and England. Ryan v. United States, 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447; Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819.

[2] Was the contract expressed in these letters the contract of the corporation? As already stated, they were signed by Mr. Wallace individually, and there was no power of attorney or resolution of the board of directors formally authorizing him to employ plaintiffs. The evidence, however, shows that the corporation was in a state of sus-pended animation. There had not been a meeting of its stockholders since 1902. The directors then elected simply continued in office. The directors seldom met. Their action was usually taken by personal conferences among the members of the board, or by correspondence. The board consisted of Mr. Noble, the president, Mr. Wallace, the treasurer, Mr. Flowers, the secretary, who, however, had only a nom-inal interest, Mr. Stone, who resided in Wyoming, and Mr. Lyman, who resided in Omaha, Neb. Mr. Wallace testified that all the letters which he received from the plaintiff McCartney, and all the letters which he wrote to him, were submitted to the other members of the board, and fully canvassed by them, and the entire negotiation had their approval. At the instance of the other members of the board, Mr. Wallace went to Los Angeles to examine the office building which was to be exchanged for the ranch, and to confer with Mr. McCart-ney and the owner of the building in regard to the exchange. Mr. McCartney accompanied Mr. Harris, the owner of the building, to

inspect the ranch, at the instance of Mr. Wallace. Mr. Wallace's expenses incurred in these matters were paid by the corporation. The exchange which was brought about through the plaintiffs' agency was consummated by the formal action of the board, and it thereby accepted the benefit of their services. We think this evidence established a contract binding upon the defendant.

[**3, 4**] In our judgment section 2309 of the California Code, requiring an agent's authority to execute a contract in writing to be itself in writing, does not apply to the executive officers of a corporation. It has never been the practice to require powers of attorney to confer authority upon such agents. We think the statute was intended to apply to agents proper; that is, persons who were not officers of the corporation. The executive officer of a corporation is something more than an agent. He is the representative of the corporation itself. It was early decided that directors, though they are only agents of the corporation, are exempt from the rule which requires the authority of an agent to be in writing in order to vest him with power to execute a deed. Burr v. McDonald, 3 Grat. (Va.) 215; Beckwith v. Windsor Mfg. Co., 14 Conn. 594; Despatch Line v. Bellamy Mfg. Co., 12 N. H. 205, 37 Am. Dec. 203.

Let it be once established that the making of the contract is within the scope of the officer's authority, then no separate writing is required from the board or the stockholders to meet the requirements of the statute of frauds. There has been much discussion in the courts as to the implied authority possessed by the different executive officers of a corporation. The cases on the subject are collected in the last edition of Cook on Corporations, § 715 et seq. The point at issue, however, in those cases, was not the form of the authority, but its extent. Nothing is said in any of them about the statute of frauds, although many of them involve deeds and mortgages of real estate so that the power of an independent agent to act on behalf of the corporation could only have been given by a written power of attorney. The courts have never held, so far as we can discover, that the power of executive officers to execute contracts which would fall within the statute of frauds must be in writing. Counsel has cited us to no such case, and we have been unable to discover any. It has frequently been held that authority from the board to an executive officer to execute a deed or mortgage on behalf of the corporation can be shown by parol. If the matter was controlled by the statute of frauds, this, of course, could not be done. Boggs v. Lakeport Agricultural Ass'n, 111 Cal. 354, 43 Pac. 1106; Fuel Co. v. Lee, 102 Wis. 426, 78 N. W. 584; Murray v. Beal, 23 Utah, 548, 65 Pac. 726. There are numerous authorities in which deeds and mortgages executed on behalf of corporations by executive officers without any resolution of the board, or any authority in writing, have been sustained. Railway Companies v. Keokuk Bridge Co., 131 U. S. 371, 9 Sup. Ct. 770, 33 L. Ed. 157; G. V. B. Mining Co. v. First National Bank, 95 Fed. 23, 36 C. C. A. 633; Union Pacific Ry. Co. v. Chicago, Rock Island & Pac. Ry. Co., 51 Fed. 309, 2 C. C. A. 174; Missouri Pac. Ry. Co. v. Sidell, 67 Fed. 464, 14 C. C. A. 477; First National Bank v. G. V. B. Mining Co. (C. C.)

89 Fed. 439; Alaska & Chicago, etc., Co. v. Solner, 123 Fed. 855, 59 C. C. A. 662; Galbraith v. First National Bank, 221 Fed. 386, 137 C. C. A. 194; Zihlman v. Cumberland Glass Co., 74 Md. 303, 22 Atl. 271; Starwitch v. Washington, etc., Co., 64 Wash. 42, 116 Pac. 459, Ann. Cas. 1913A, 262; Alton Mfg. Co. v. Garrett, etc., Inst., 243 Ill. 298, 90 N. E. 704; Miller v. Bellamore, etc., Co., 86 Conn. 548, 86 Atl. 13; Ismon v. Loder, 135 Mich. 345, 97 N. W. 769; Smith v. Bank of N. E., 72 N. H. 4, 54 Atl. 385; Indiana, etc., Co. v. Robinson, 29 Ind. App. 59, 63 N. E. 797; Burke v. Sidra Bay Co., 116 Wis. 137, 92 N. W. 568; Melledge v. Boston, etc., Co., 59 Mass. (5 Cush.) 158, 179, 51 Am. Dec. 59. The rule is stated as follows by Cook, in the last edition (7th) of his work on Corporations (volume 3, p. 2471):

"A corporation may enter into a written contract under seal without a formal vote or written entry of a vote by the directors. Where the directors are present, and all assent to the execution of the contract, this is sufficient."

[5] Here the employment of the plaintiffs was known to and approved by the stockholders of the corporation, and the members of its board of directors. That approval was given in the manner in which the corporation, which had ceased its active business, had been accustomed to act. The board of directors were fully informed of the employment, and encouraged Mr. Wallace to go forward with the negotiations and to consummate the transaction, if possible. Finally the board accepted the result of plaintiff's employment and carried out the exchange. The corporation thus received, with full knowledge, the benefit of the plaintiff's services. We think the contract of employment under such circumstances was as binding upon the corporation as if it had been authorized by formal vote of the board, and this is in accord with numerous decisions of the courts. Cunningham v. German Ins. Bank, 101 Fed. 977, 41 C. C. A. 609; First National Bank v. G. V. B. Mining Co. (C. C.) 89 Fed. 439; In re Cincinnati, etc., Co., 167 Fed. 486, 93 C. C. A. 122; Galbraith v. First National Bank, 221 Fed. 386, 137 C. C. A. 194; Thompson on Corporations, § 1409.

[6] Some time previous to the employment of the plaintiffs, the corporation issued a prospectus which closed with the following language:

"No brokerage commission will be paid except after written contract with the Clover Valley Land & Stock Company with respect thereto."

Plaintiffs had this prospectus before them, and knew of the provision. We do not think, however, that this impairs their right to compensation. The provision quoted relates to executory contracts. It has nothing to do with the payment for services which had been fully rendered and accepted by the corporation. After the services had thus been rendered and accepted there was no occasion for any contract to pay for them. The law imposed the duty.

[7] A distinction should be drawn in this case between two classes of employment of real estate brokers. If the terms of the sale or exchange are specifically fixed in advance, and the broker undertakes to find a purchaser who will take the property upon the prescribed terms, then he is entitled to no commission unless he finds such a pur-

chaser. The transaction here involved is not of that class. Here the terms of the exchange or sale of the ranch were to be left to negotiations between the defendant company and the purchaser produced by the broker. When that is the nature of the employment, if the broker produces a customer, and renders such aid as he is asked to render in consummating the sale or exchange, then, if the vendor of the property accepts the purchaser and consummates the sale or exchange, he becomes liable for a reasonable compensation or brokerage. That is the nature of the transaction involved in the present case.

It is hardly necessary to add that our reversal of the judgment of the trial court cannot properly be treated as an intimation that the commissions claimed in the complaint are a reasonable compensation for plaintiffs' services. That question is remitted to the trial court for its determination.

The judgment of the trial court is reversed, with directions to grant a new trial.