*460 Breitel, J.
The issue is whether the “ managing agent ” of plaintiff landlord’s predecessor in interest, who purportedly executed a store lease extension agreement by informal letter, was an agent for purposes of subdivision 2 of section 5-703 of the General Obligations Law; and, if so, whether the evidence of his authority to execute the extension agreement satisfies the statute.
Vartan Jinishian, now deceased, had been president and sole stockholder of Madison Avenue Realty Corporation, owner of commercial property at 554 Madison Avenue, its sole asset. Harry Aprahamian was the managing agent of the building from 1948 to 1968. During this period he collected the rents, negotiated leases and the extensions of leases, arranged for bids and contracts with respect to painting, plumbing, and electrical work on the premises. In June, 1964 Jinishian, by letter, extended Aprahamian’s employment at the same monthly salary as managing agent for the corporation’s building for a period of six years to be measured from Jinishian’s death. By letter, bearing the date of February 14, 1966, Aprahamian purported to extend the lease of defendant Roger Gray, Ltd., a tenant, for a period of three years from January 31, 1971 until January 31, 1974. The letter was signed “ Madison Avenue Realty Corporation By Harry Aprahamian, Manager ’ ’. On May 17, 1966, plaintiff landlord acquired all the outstanding shares of Madison by gift from Jinishian. On November 30, 1967, fee title was deeded by the former landlord Madison to the present landlord, plaintiff.
The date of the purported extension is significant; it is February 14, 1966. This is just short of five years before the tenant’s lease was to expire by its terms. And it is just short of three months before the entire corporate stock of the former landlord was transferred to the present landlord as a charitable gift..
The landlord’s treasurer, Pattison, first learned of the alleged lease extension to Roger Gray in August, 1966. In January, 1969 plaintiff landlord entered into an agreement for the sale of 554 Madison Avenue subject to, among other things, the Roger Gray lease expiring on January 31, 1971. Upon learning of the prospective sale, the tenant, Roger Gray, informed the landlord of the written extension. The landlord then brought *461 this action for a judgment declaring that the purported lease extension was invalid. Special Term granted the landlord’s motion for summary judgment, holding the extension letter to be without legal effect.
The Appellate Division reversed, one Justice dissenting. It premised reversal on alternative theories: First, whether the corporation was a signatory to the extension agreement is determined by general corporate law- and is not affected by the General Obligations Law; and,'second, assuming Aprahamian to be an agent for purposes of the General Obligations Law, the written authorization need not be specific and referable to the particular lease.
The order of the Appellate Division should be reversed, and Special Term’s determination granting plaintiff landlord summary judgment should be reinstated.
The statute reads in relevant part that a lease for a period longer than a year must be in writing and “ subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing ” (General Obligations Law, § 5-703, subd. 2). The mandate that the authority of the putative agent be in writing is not peculiar to New York but is found in the Statute of Frauds provisions of more than a dozen States (1944 Report of N. Y. Law Rev. Comm., pp. 91-102; 2 Williston, Contracts [3d ed.], § 276; Ann., Statute of Frauds — Agent’s Authority, 27 A. L. R. 606).
Defendant tenant urges this court to adopt an interpretation of the statute which is not only strained but also without precedential support. It argues that the statute does not apply when the putative agent is also an employee of the corporation. Because a corporation must perforce act through individuals, it contends that if the instrument is executed by an officer or employee on behalf of the corporation, the act of execution is not that of an agent but the act of the corporation itself. The court then, it says, need not reach the question of agency and the requisite written authorization required by the Statute of Frauds.
This reasoning is unsound.
In the first place, an issue under a Statute of Frauds, such as section 5-703, may not be resolved by reference to rules of agency affecting corporations. If it were otherwise, then the *462 Statute of Frauds would be largely obviated as to corporations and to that extent rendered a virtual nullity. None of the cases in this State or elsewhere have ever taken such a view. The tenant cites none. Indeed, the reasoning urged by the tenant has been expressly rejected as untenable in other jurisdictions (see, e.g., Stammelman v. Interstate Co., 111 N. J. L. 122, 124-126; Lindhorst v. St. Louis Protestant Orphan Asylum, 231 Mo. 37-9, 392, involving “ a general agent for the West ”; see, generally, 19 Am. Jur. 2d, Corporations, § 1168). Moreover, the essential premise underlying that reasoning begs the question. The nub of the issue is whether the Statute of Frauds requires that an employee acting as an agent be authorized in writing before he may execute certain kinds of instruments. For that issue it must be assumed that a party can supply parol proof that the actor was both an employee and an agent, and possessed with purported authority. Of course, if by the extraneous proof the purported agent’s act was not authorized, or he was not an agent, that is the end of the matter and there is no need to have recourse to the Statute of Frauds. Consequently, the issue tendered on this appeal is, assuming that the purported agent was indeed the agent authorized by parol evidence, does his act of extending the lease fail for lack of compliance with the Statute of Frauds as to his own authorization (56 N. Y. Jur., Statute of Frauds, § 125, and cases cited at n. 3).
The second problem is whether an employee who is also an agent, or better, an agent who is also an employee, falls within subdivision 2 of section 5-703. Although it has been often stated that a corporate officer or director is not an “ agent” within the meaning of the Statute of Frauds requiring written authorization, the rule has not been applied to employees or agents who are not officers or directors (Ann., Agent’s Authority—Writing, 1 A. L. R. 1132; 2 Williston, op. cit., supra, § 276, at p. 203 ; 37 C. J. S., Statute of Frauds, § 207). On the contrary, the authorities relied on by the parties expressly limit the exception to directors and officers (Klores v. Empire Tit. & Guar. Co., 64 N. Y. S. 2d 477 [Sup. Ct., Nassau County]; Hasenfratz v. Berger Apts., 61 N. Y. S. 2d 12 [Sup. Ct., Kings County]; Jeppi v. Brockman Holding Co., 34 Cal. 2d 11; McCartney v. Clover Val. Land & Stock Co., 232 F. 697, Ann. 1 A. L. R. 1132; see, also, Clement v. Young-McShea Amusement Co., 70 N. J. *463 Eq. 677, holding that even officers and directors must be authorized in writing). A case of marked interest, involving an “Assistant General Land Agent” for a railroad who lacked any written authorization to execute a contract for the sale of land, arose in Pennsylvania. In Rosenblum v. New York Cent. R. R. Co. (162 Pa. Super. 276) the court was asked to extend the exception to “ regular employees of the corporation ”. It emphatically declined to do so and unequivocally limited the exception to executive officers.
The reason for the exception for officers and directors rests in the view that corporations can only act through individuals. Indeed Fletcher has made the point, with obvious hyperbole, that, ‘ ‘ The officers, as such, are the corporation. An agent is an employee ” (2 Fletcher, Cyclopedia Corporations [Perm, ed., 1969], ch. 11, § 266, at p. 16). (See, generally, 56 N. Y., Jur., Statute of Frauds, § 244.)
In considering the exception, and any possibility of its extension, it must be kept in mind that the very statute with which this case is concerned deals also with contracts to sell real property and with transfers of real property. Indeed a lease for more than three years is a recordable instrument (Real Property Law, § 290). The reason why recordable instruments must in turn have their execution supported by documents of rank is self-evident. Otherwise the recorded documents would actually be resting on oral evidence. It is interesting in this context that at common law an agent could execute a sealed instrument only if he himself was authorized to do so under seal (Restatement, Second, Agency, § 28, Comment a). The Law Bevision Commission noted that the need for extending the agency provisions of the Statute of Frauds was created by the need to fill gaps resulting from the abolition of the seal (1944 Report of N. Y. Law Rev. Comm., pp. 124—126).
Notably, the tenant, as already said, cites no authority to sustain the argument that an employee-agent does not come within the agency provision of the statute. It tries only to chip away by tenuous distinctions at the cases relied upon by plaintiff landlord, to show that they involve dicta or could have been decided on narrower rabiones decidendi. From a practical point of view it should be recalled that real property instruments, even when executed by corporate officers, have appended *464 corporate certificates of authorization (e.g., 60 Bender’s Forms, Real Property Law, p. 1476).
The last and determinative question is whether the employee-agent in this case had any kind of writing sufficient to comply with the statute. He did not. What defendant relies on is Jinishian’s letter to Aprahamian of June 4, 1967 which reads as follows:
June 4, 1964
Mr. Harry Aprahamian,
554 Madison Avenue,
New York 22, New York.
Dear Harry:
In view of the fact that you have been an employee of our Corporation for many years and proved yourself efficient and faithful, we agree to extend the period of your employment for six years from the date of my death; and you are to continue as Managing Agent of the building owned by the Corporation at 554 Madison Avenue, New York City, at the same monthly wage which you may he receiving from us at the time of my death.
Very truly yours,
Madison Avenue Realty Corporation
Vartan H. Jinishian
By Vartan H. Jinishian
President
Accepted:
Harry Aprahamian
Witness:
Robert W. White
A managing agent is not a corporate officer. Moreover, it is an accordion title. Sometimes it is an honorific and refers to a janitor with authority to negotiate leases. At other times it refers to independent corporate enterprises taking over the entire management and control of buildings, but then, almost invariably under written agreements of considerable length and containing minute detail (see, e.g., the managing agent agreement, dated in 1945 and executed between Jinishian’s corporation and Wm. A. White & Sons, including, especially, the typewritten interlining requiring consent in writing by the owner to any new leases or renewals [art. II, par. (c)]).
From the foregoing paragraph it is also evident that authority to manage did not imply any authority to execute leases or *465 renewals. At this point it is critical to recognize that two Statutes of Frauds, with independent origins but now embraced in one subdivision of section 5-703 of the General Obligations Law, are applicable: The one, not in issue in this case, which requires leases for terms longer than one year to be in writing; and the other, the issue in this case, requiring an agent, apart from any authority he may be able to establish by parol evidence to execute such a lease, to be authorized to do so in writing. Hence, the issue is not whether the authority to manage embraces, under the second of the mentioned Statutes of Frauds, authority either to negotiate or make leases, but whether the specific authority to execute a lease required to be in writing is itself in writing. The letter to the employee-agent falls far short of satisfying the statute. In thus viewing the letter, it does not mean that a satisfactory written authorization must name the particular transaction, but at the very least it must give express authority to execute documents in a determinate class of transaction (cf. Hamilton Park Bldrs. Corp. v. Rogers, 4 Misc 2d 269; see 37 C. J. S., Statute of Frauds, § 213, p. 709, to the effect that: “ The writing need not be in any special form; but it must contain a sufficient expression of an intent to confer authority, and it must confer authority to execute the very contract which the agent undertakes to execute. The writing must contain express language conferring authority to execute a contract of sale see, also, Bacon v. Davis, 9 Cal. App. 83).
On this analysis plaintiff landlord is entitled to summary judgment as a matter of law, as Special Term concluded. Nor may the frontal issue be avoided by raising attenuated issues of fact. The critical issue of law is whether the statute requires a writing and whether there is one. A writing is required and there is none. To accept the reasoning of the tenant is to blunt the applicable rule of law, open the door to inaccurate if not perjured recollections, and by the inescapable analogy between leases and the other real property instruments covered in the same section 5-703, unsettle the salutary and unvarying interpretations.
A final comment is made necessary on an issue not properly before the court in summary judgment procedure, unless the Statute of Frauds is to be applied only where the court is convinced that the statute is unnecessary because as a matter of law the barred evidence could not be proven. But since reference *466 is made to prior lease extensions arranged by the employee-agent, it is appropriate to show how different they were and thereby demonstrate a salutary consequence of the statute which might otherwise seem harsh in effect.
It is true that Aprahamian had in the past arranged lease extensions. In each case but one the tenant was required to return the extension subscribed with his acceptance, or to give notice of acceptance by registered mail, before the extension became binding. In the exception, the extension was not to become binding until a full formal lease extension was signed by the tenant. In each instance, the language of the letter is that of one to whom the English language is evidently the mother tongue with a suggestion of legal terminology. In this case, these characteristics are absent. Most important is that Aprahamian’s letter does not bind the tenant. It is unilateral in form, requires and carries no acceptance, and was “ missing ” from landlord’s files. It is a comparison of these letters, if support were relevant, which justifies a Statute of Frauds applicable to agents who purport to execute leases or extensions by informal letter on behalf of their principals, even if alive.
Accordingly, the order of the Appellate Division should be reversed, with costs, and summary judgment granted to plaintiff landlord.