Wachtler, J.
Plaintiff, the owner of a building in Manhattan, commenced this action for specific performance of a three-year lease. Defendant moved for dismissal of the complaint and summary judgment claiming that the lease is unenforceable under the Statute of Frauds (General Obligations Law, § 5-703, subd 2). It is conceded that the lease is signed only by the plaintiff. The trial court denied the motion stating that a question of fact was presented as to whether the defendant orally accepted its terms. The Appellate Division reversed, granted summary judgment to the defendant and dismissed the complaint without deciding the applicability of the Statute of Frauds. Instead the court held that "[q]uite apart from the Statute of Frauds” it was conclusively demonstrated by the escrow arrangement between the parties that they did not intend to be bound until a formal written contract had been signed and delivered. From that determination plaintiff has now appealed to this court as of right (CPLR 5601, subd [a], par [ii]).
The complaint and the affidavits submitted in opposition to the defendant’s motion allege that in May of 1975 the parties *662 began negotiations for a lease of the top four floors of the plaintiffs building. According to the plaintiff, this resulted in full agreement on the terms of the lease, and all that remained were the formalities of a written document. Defendant’s lawyer then drafted a three-year lease with a term beginning on June 1, 1975 and sent a copy to plaintiff and his attorney on May 29. The following day plaintiff and his attorney spoke with defendant’s attorney at his office with regard to certain proposed changes. The defendant was not present but defendant’s attorney contacted him by telephone and discussed the changes. Plaintiff then spoke with the defendant on the phone and, once again, they fully agreed on the terms .of the lease. Plaintiff agreed to return the following day to sign the papers and, although defendant could not attend, it was agreed that defendant’s attorney would hold the lease in escrow until he obtained the defendant’s signature and the first month’s rent.
On May 31 plaintiff signed the lease and left it with defendant’s attorney. However on June 2 the defendant called the plaintiff and told him that he had changed his mind and did not intend to sign the lease.
In a second, separate cause of action plaintiff alleges that both parties partially performed the lease. He says that he removed his office, telephone equipment and furniture from the premises and sold certain antiques in order to clear the area for the defendant’s use. He claims that the defendant "went into possession” by directing his mail to that address and by having various people "upon the said premises” on June 2 "for the purpose of initiating renovations and decorations”.
The defendant denies ever orally agreeing to the terms of the lease. His primary point, however, is that the lease is unenforceable since he never signed it. He relies on subdivision 2 of section 5-703 of the General Obligations Law which states: "A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing.”
The plaintiff’s position is that subdivision 2 applies only to contracts to enter into a lease. But once a lease is in existence, plaintiff contends that its validity depends on subdivision 1 of *663 section 5-703 of the General Obligations Law the relevant portion of which states: "An estate or interest in real property, other than a lease for a term not exceeding one year * * * cannot be created, granted * * * or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting * * * or declaring the same, or by his lawful agent, thereunto authorized by writing.” The plaintiff readily concedes that a landlord cannot simply sign a lease and unilaterally bind an unwilling tenant to its terms. He claims however that under this subdivision "a lease for a term of more than one (1) year is valid and binding if, after full agreement with the tenant as to all of the terms, it is subscribed by the landlord.” He urges that our decision in 300 West End Ave. Corp. v Warner (250 NY 221) supports this position.
In the West End case the plaintiff landlord sought damages for a breach of an alleged agreement to enter into a lease. The defendant argued that the purported agreement was unenforceable because it involved "a contract for the leasing * * * of any real property” and had not been "subscribed by the lessor or grantor” as was then required by section 259 of the Real Property Law (the predecessor of General Obligations Law, § 5-703, subd 2). The question was whether the lessee could assert the statute as a defense. We held that he could.
During the course of the opinion we indicated that the statute as it then read did not appear to provide adequate safeguards for the lessee. We noted that the original statute, passed in 1787, required the signature of the party to be charged; that it was redrafted in 1828 to require the signature of both parties, but in the revised version finally adopted, only the lessor’s signature was necessary. We could find no explanation for the change, but we proceeded to dispell the notion that the statute should be literally read so as to permit a lessor or vendor to "enforce an oral executory contract against the purchaser merely by writing and subscribing a memorandum of the bargain” (p 227). As we interpreted the statute it was still necessary for the vendor or lessor to prove that there had, in fact, been a meeting of the minds. We stated: "The note or memorandum, although subscribed by the lessor or grantor alone becomes enforceable by him only when the lessee or grantee is shown in some manner to have accepted it as evidence of a valid and operative agreement between the parties” (300 West End Ave. Corp. v Warner, supra, at p 228).
*664 The Law Revision Commission felt that even this interpretation did "not afford sufficient protection to the grantee or lessee, where it is sought to enforce the contract against him” (see Law Revision Commission Report, NY Legis Doc, 1944, No. 65, p 75). They recommended that section 259 of the Real Property Law (now General Obligations Law, § 5-703, subd 2) be amended to require the signature of the party to be charged before the agreement would be enforceable, and the Legislature adopted the recommendation (see NY Legis Doc, 1944, No. 65, p 73).
This analysis shows that subdivision 2 (General Obligations Law, § 5-703) does indeed apply to contracts to enter into a lease, as plaintiff maintains. It also shows that upon reconsideration the Legislature rejected the theory suggested in West End, that a "tenant” should be bound to such an agreement when it has been signed only by the lessor—even though there may be evidence that the tenant orally accepted its terms. Now an agreement to enter into a lease is void unless signed by the party against whom it is sought to be enforced.
The question then is whether the Legislature intended a different rule to apply when, as in the case now before us, the landlord seeks to enforce a lease which he alone has signed. From a practical standpoint, of course, it makes little difference to the tenant whether the lessor has signed a lease or an agreement to enter into a lease. In either event, if the agreement is held to be enforceable, the tenant will ultimately be bound to observe the terms of the lease. And if the landlord’s signature on an agreement to enter into a lease, coupled with proof of the tenant’s oral acceptance of its terms, does not adequately protect the tenant from fraud or perjury, merely requiring the landlord to sign the lease itself will hardly improve the tenant’s position. It might in fact evolve into a device for avoiding the statute or at least inspire the kind of questionable testimony and litigation which the Statute of Frauds was designed to prevent (see, e.g., Burns v McCormick, 233 NY 230, 234).
The argument on the other side is essentially technical. The plaintiff notes that a lease is an interest in real property (General Obligations Law, § 5-301, subd 2) and that subdivision 1 (General Obligations Law, § 5-703) provides that such an interest may be effectively created by a deed or conveyance subscribed only "by the person creating * * * the same.” But it does not follow, as plaintiff suggests, that a person named as *665 a tenant in a purported lease should be bound by its terms because it is signed by the lessor. The point is that a lease, especially a modern lease, is generally more than a simple conveyance of an interest in land for a fixed period of time. Typically it is also a contract which requires the parties, particularly the tenant, to fulfill certain obligations while the lease is in effect. Indeed the proviso suggested by the plaintiff —that the lessor’s signature should be binding on the tenant under subdivision 1 (General Obligations Law, § 5-703) only when the parties have previously reached "full agreement * * * as to all of the terms”—indicates that although the lease may be a conveyance, it is one part contract as well. In some cases it has been assumed without question that a lease is a contract governed by subdivision 2 (General Obligations Law, § 5-703) and thus unenforceable unless signed by the party to be charged (see, e.g., Commission on Ecumenical Mission v Roger Gray, Ltd., 27 NY2d 457; Dung v Parker, 52 NY 494; but see 300 West End Ave. Corp. v Warner, supra, at p 228).
At best plaintiff’s argument now points up an ambiguity in the wording of the statute. In one sense, narrow and incomplete, a lease may be viewed as a transfer of an interest in land and therefore effective although it is signed only by the lessor (General Obligations Law, §5-703, subd 1). But in another more realistic and accurate sense it is "a contract for the leasing * * * 0f * * * rea] property” which is void unless signed by the party against whom it is sought to be enforced (General Obligations Law, § 5-703, subd 2). The apparent overlap or ambiguity inherent in the statutory language disappears when the two subdivisions are traced to the source.
Both of these subdivisions are derived from the Real Property Law. Subdivision 1 (General Obligations Law, § 5-703) was formerly section 242 of the Real Property Law, and as already noted, subdivision 2 (General Obligations Law, § 5-703) was formerly section 259 of the Real Property Law. Prior to our decision in the West End case both of those statutes required a writing subscribed by the lessor or grantor. However, the Law Revision Commission noted that this consistency was inappropriate because the two statutes relate to entirely different types of transactions. The report states that "the transactions described in section 242 are executed, whereas section 259 relates to executory agreements. All other statutes of frauds which concern executory agreements or *666 transactions require a writing signed by 'the party to be charged,’ which is held to mean the person against whom enforcement is sought. Originally the provision which is now section 259 also prescribed signature by 'the party to be charged.’ (Laws of 1787, Ch 44.)” (See Law Revision Report, NY Legis Doc, 1944, No. 65, p 715.) This report prompted the amendment, mentioned earlier, which restored the original wording to the statute. Thus section 259 of the Real Property Law, and now subdivision 2 (General Obligations Law, § 5-703) requires that "executory” contracts relating to land be signed by the party to be charged; that is, the usual Statute of Frauds concept or, in the words of the Legislature, "the provision found in other statutes requiring a contract to be in writing” (NY Legis Doc, 1944, No. 65, p 73).
The distinction between the two subdivisions then is the traditional one between a true Statute of Frauds—which applies only to contracts and requires a writing signed by the party to be charged— and a statute codifying the common-law rules of conveyance, which merely require the writing to be signed by the party creating the interest (see 2 Corbin, Contracts, §§ 396, 520). Subdivision 2 is obviously derived from the Statute of Frauds prototype, the British "Statute for the Prevention of Frauds and Perjuries”, which invalidated most contracts relating to land, unless in writing and signed by the party to be charged (see, e.g., Simpson, Contracts, §§ 46, 58; 2 Corbin, op. tit., §§275, 396). The statute does not "include executed conveyances” but it does apply to a leasing agreement, for a term exceeding a year, "whether it purports to be an immediate transfer of the leasehold interest or to be a contract requiring the future execution of a documentary lease” (2 Corbin, op. tit., §§396, 402; see, also, 3 Warren’s Weed N. Y. Real Property [4th ed], Leases and Settings, § 3.01, p 27). In sum, the lease is a contract within the Statute of Frauds (General Obligations Law, § 5-703, subd 2), and the statute has not been satisfied.*
As regards the plaintiff’s second cause of action, it is sufficient to note that although a court of equity may enforce an oral agreement when there has been part performance (see, e.g., General Obligations Law, § 5-703, subd 4), the acts performed must be " 'unequivocally referrable’ to the agreement *667 * * * It is not enough that what is promised may give significance to what is done” (Burns v McCormick, 233 NY 230, 232, supra). The acts alleged by the plaintiff, if proven, would not satisfy that requirement (see, e.g., Wilson v Le Van, 22 NY2d 131; Wills v Wills, 28 NY2d 645).
The order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order affirmed, with costs.

 In view of this disposition, it is unnecessary to consider the point decided at the Appellate Division: that is, whether the parties did not intend to be bound until a formal written contract was signed and delivered.