**CINEMA NORTH CORPORATION, Plaintiff-Appellant, Cross-Appellee,**

**v.**

**PLAZA AT LATHAM ASSOCIATES and Hoyt's Cinema Corporation, Defendants-Appellees, Cross-Appellants.**

**Nos. 73, 148 and 224, Dockets 88-7389, 7421 and 7423.**

United States Court of Appeals, Second Circuit.

Argued Aug. 30, 1988.

Decided Feb. 1, 1989.

Paul F. Feigenbaum, Albany, N.Y. (White, Brenner & Feigenbaum, of counsel), for plaintiff-appellant.

Daniel J. Tyson, Albany, N.Y. (Zubres, D'Augostino & Hoblock, of counsel), for defendants-appellees, Plaza at Latham Associates.

David S. Weiss, Boston, Mass. (Goulston & Storrs, of counsel), for defendants-appellees, Hoyt's Cinema Corp.

Before FEINBERG, Chief Judge, CARDAMONE and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

On this appeal we are asked to determine whether, under New York State's statute of frauds, a partnership may avoid the obligations of an agreement signed by a person who identifies himself as the partnership's "Vice President", but who is not specifically authorized in writing to enter into such an agreement.

Cinema North Corporation ("Cinema North") appeals from the granting of defendant Plaza at Latham Associates' motion for summary judgment and the dismissal of Cinema North's claim against defendant Hoyt's Cinema Corporation ("Hoyt's"). In the district court Cinema North claimed that Plaza at Latham Associates ("Plaza") had breached its agreement to lease theater space to Cinema North and that Hoyt's had tortiously interfered with this contract between Plaza and Cinema North.

Plaza argued that it could not be bound to the agreement because the agent who signed the agreement had not been authorized in writing to do so, as required by the New York State statute of frauds. N.Y. Gen.Oblig.Law § 5-703(2) (McKinney 1978). Accepting Plaza's argument, the district court concluded that, although there were some unresolved questions of fact, none of them was material because, regardless of how they might be resolved, Plaza was not bound by the agreement. The district court also dismissed Cinema North's claim against Hoyt's: since Cinema North could not establish a valid contract to which Plaza was bound, *a fortiori* it could not maintain its claim against Hoyt's for tortious interference with that contract.

New York law provides an exception from its statute of frauds' requirement for written authority when the signing agent is a corporate officer; we must consider here whether that exception applies to a partner or to an officer of a corporate partner of a partnership.

We hold that under New York law a partnership may not avoid the obligations of an agreement signed by such an officer simply because he had not been authorized in writing to enter into the agreement. We do not decide whether Plaza's self-described "Vice President", Gary A. Carstens, was such an officer of Plaza or whether this exception to the statute of frauds applies to the facts of this case; we determine only that the absence of a written authorization for Carstens' signature was insufficient to permit summary judgment for Plaza and that material questions of fact, including those surrounding Carstens' relationship to Plaza, and Plaza's relationship with Eugene Weiss, I.K.S., Inc. and E.W. Development Co., require further proceedings in the district court.

## I. BACKGROUND

In 1987 Plaza, a New York partnership that owns and operates Latham Circle Mall ("the mall"), near Albany, New York, planned an expansion of the mall that was to include the construction of an eight-mov-

ie-theater cinema complex. Through two of its employees, Carstens and Michael Glenn, Plaza commenced discussions with representatives of Cinema North about leasing and operating the cinema complex.

After about one month of negotiations, Cinema North and Plaza on July 8, 1987, executed a written "proposal" for lease of the theaters. This proposal was typed on Plaza stationery and was signed by Cinema North's president, Gerald Couture, and Cinema North's vice-president, Kevin Mullin, as officers of "Latham Circle Mall Cinemas (corporation to be formed)", and by Carstens as "Latham Circle Mall Representative". Underneath Carstens' signature he is identified as "Vice President". Carstens was not a partner of Plaza, its only general partners being Eugene Weiss and I.K.S., Inc., a Florida corporation. Eugene Weiss, the only individual who is a partner in Plaza, is also the sole shareholder in I.K.S., Inc., as well as a principal of E.W. Development Company. The facts are disputed concerning the relationships among E.W. Development Company, Weiss, Plaza, and Carstens.

On July 21, 1987, a second, corrected "proposal" was prepared on Plaza stationery and was later executed by the same parties. Following Carstens' signature is a handwritten "V.P." and underneath, just as on the July 8, 1987 proposal, he is identified as "Vice President". Both proposals provided that Latham Circle Mall Cinemas as tenant, with Cinema North as guarantor, would lease at specified rents approximately 20,000 square feet of theater space from Plaza for fifteen years commencing October 1, 1988.

Between July and November 1987 several conferences between Cinema North and Plaza were held to negotiate the details of a more formal "Shopping Center Lease" and, Cinema North alleges, the parties reached agreement on these terms in November. The formal lease, however, was never signed. Cinema North also alleges that, during the same period, it made purchases totaling over $15,000 for use in the theaters and made other financial arrangements in reliance on its agreement with Plaza.

On February 16, 1988, Plaza advised Cinema North that it was entering into a lease agreement with Hoyt's and that therefore it was not in a position to conduct further negotiations with Cinema North.

Cinema North commenced this diversity action in federal district court seeking specific performance of the contract by Plaza and claiming tortious interference with the contract by Hoyt's. Finding that Carstens lacked written authority to enter into the lease, the district court granted summary judgment in favor of Plaza and dismissed Cinema North's claims against Hoyt's. This appeal followed.

## II. DISCUSSION

Under Fed.R.Civ.P. 56(c) summary judgment shall be granted when, viewing the record in the light most favorable to the nonmoving party, *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam), the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To defeat a motion for summary judgment a plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," *Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir.1988).

Plaza asserts that the district court's grant of summary judgment in Plaza's favor may be affirmed on any of three grounds: (1) Cinema North lacks standing to sue for enforcement of the contract; (2) the "proposal" was insufficient to satisfy the statute of frauds as a matter of law; and (3) Carstens was not authorized in writing to sign a binding lease agreement on behalf of Plaza at Latham Associates, as required by the statute of frauds. We disagree and remand for further proceedings.

1. *Standing of Cinema North.*

■ Because Cinema North is merely the guarantor of the proposed lease agreement, and not the tenant which was a corporation to be organized, Plaza argues that Cinema North does not have standing to sue for enforcement of the lease agreement. In essence, Plaza challenges Cinema North's status as a real party in interest under Fed.R.Civ.P. 17(a).

"[A]n agent who has an ownership interest in the subject of the suit * * *, which is a question to be answered under the applicable substantive law, is a real party in interest" (footnote omitted). 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1553, at 698 (1971 & Supp.1988). The question, then, is whether, under New York law, Cinema North has an ownership interest in the lease and acted as an agent for Latham Circle Mall Cinemas, the tenant named in the proposed lease.

Cinema North, through its officers, negotiated and signed the proposal, and thus acted as the agent for Latham Circle Mall Cinemas. This, together with the identity of officers between Cinema North and Latham Circle Mall Cinemas, and the fact that Cinema North would have a controlling ownership interest in Latham Circle Mall Cinemas when formed, makes Cinema North a real party in interest with respect to the agreement. *See Hanna Mining Co. v. Minnesota Power & Light Co.*, 573 F.Supp. 1395, 1398 (D.Minn.1983), *aff'd*, 739 F.2d 1368 (8th Cir.1984).

However, the fact that Cinema North's principal was a "corporation to be formed" has some consequences under New York law that we must consider. Ordinarily a party that executes an agreement on behalf of a "corporation to be formed" is not bound to the agreement personally, and therefore cannot compel the other party specifically to perform the agreement. *Adamo v. Flow*, 44 Misc.2d 628, 254 N.Y. S.2d 668 (Sup.Ct. Monroe Cty.1964) (plaintiff who executed offer to purchase real estate in his own name followed by the words "in behalf of a corporation to be formed", not intending to be personally bound, may not obtain specific performance). Here, however, officers of Cinema North executed the agreement on behalf of a corporation to be formed and agreed that Cinema North would act as the guarantor for the first five years of the lease. Thus, even though Plaza could not sue Latham Circle Mall Cinemas for enforcement of the lease, Plaza could sue Cinema North on its guaranty. The guaranty agreement supplies the mutuality of obligation that was missing in *Adamo v. Flow*, 44 Misc.2d at 628, 254 N.Y.S.2d at 669.

Still, even though the guaranty agreement provides mutuality of obligations, New York law restricts the circumstances under which the guarantor may assert a claim inhering in the principal. The question of the guarantor's standing to assert a claim usually arises when the guarantor has been sued on its guaranty and seeks to interpose, as an affirmative defense or counterclaim, a cause of action existing in the principal. New York courts have long held that, as a general rule, the guarantor may not assert its principal's claim. *See Ettlinger v. National Sur. Co.*, 221 N.Y. 467, 117 N.E. 945 (1917); *Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 55, 241 N.Y.S.2d 834, 838, 191 N.E.2d 894, 897 (1963).

An exception to this general rule has been recognized when the principal consents to the use of its cause of action by the guarantor. *Taylor & Jennings v. Bellino Bros. Constr. Co.*, 57 A.D.2d 42, 44–45, 393 N.Y.S.2d 203, 205 (3rd Dep't 1977) ("The principal may consent to the use of its cause of action on the principal contract as a defense by the surety when sued by the creditor on the contract of guaranty."). Furthermore, "[w]here the guarantor controls the principal, consent will be presumed", *Bloor v. Shapiro*, 32 B.R. 993, 1001 (S.D.N.Y.1983) (*citing Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 56–57, 241 N.Y.S.2d 834, 839, 191 N.E.2d 894, 898 (1963)).

Here, the principal, Latham Circle Mall Cinemas, was a corporation to be formed by, to be controlled by, and to have the same officers as Cinema North. Because the purpose of the general rule precluding guarantors from asserting claims belong-

ing to principals is to protect the rights of the principals, a guarantor may assert such claims where, as here, it may be presumed to have the principal's consent.

Thus, we reject Plaza's claim that Cinema North lacks standing to bring this action.

2. *Enforceability of the Proposal.*

■ We also agree with the district court that the "proposal" is not unenforceable as a matter of law. To be enforceable an agreement must contain, either expressly or by implication, all of the terms deemed material by the parties. *Candid Prods., Inc. v. International Skating Union,* 530 F.Supp. 1330, 1333 (S.D.N.Y.1982) (citations omitted). The absence of non-essential terms will not render an agreement unenforceable, *V'Soske v. Barwick,* 404 F.2d 495, 500 (2d Cir.1968), *cert. denied,* 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969).

Plaza argues that because the tenant named in the proposal is a corporation that was not yet formed at the time the proposal was signed, nor even formed at the time this lawsuit was initiated, the agreement is too indefinite to be enforceable. We do not agree. The proposal names as tenant the corporation to be formed and its officers, and specifies that Cinema North will be the guarantor of the lease for the first five years. The proposal also identifies the quantity of space in the proposed shopping center, and specifies the rent to be paid and the term of the lease. While the proposal may lack certain terms, it is not apparent on the face of the proposal that the missing terms were deemed material by the parties. Whether any terms omitted from the proposal were indeed material remains a question of fact. Therefore Plaza is not entitled to summary judgment on this ground.

3. *Carstens' lack of written authority.*

■ Under the New York State statute of frauds an agreement for the sale or lease of land will not be binding unless "in writing subscribed by the party to be charged, or by his lawful agent thereunto authorized in writing". N.Y.Gen. Oblig.Law § 5–703(2) (McKinney 1978). An agent or employee of a corporation or partnership may bind the entity to a lease of more than one year only if the agent is authorized, specifically and in writing, to execute a lease on behalf of the entity. *Commission for Ecumenical Mission & Relations of the United Presbyterian Church v. Roger Gray,* 27 N.Y.2d 457, 465, 318 N.Y.S.2d 726, 732, 267 N.E.2d 467, 471 (1971). A corporate officer, however, is not an "agent" within the meaning of the statute, *Roger Gray,* 27 N.Y.2d at 462, 318 N.Y.S.2d at 730, 267 N.E.2d at 469, and written authorization is not required for an agreement signed by an officer to be binding on the corporation. *See Burton Flax v. B.M. Dev. Corp.,* 35 A.D.2d 565, 566, 313 N.Y.S.2d 591, 592 (2d Dep't 1970); *Scientific Holding Co. v. Plessey Inc.,* 510 F.2d 15, 21 (2d Cir.1974). The reason for this "exception" to the requirement of written authority is that, since a corporation cannot act for itself, the acts of the corporate officers on behalf of the corporation are deemed to be the acts of the corporation itself. Thus, an agreement signed by a corporate officer is, for the purposes of § 5–703(2), "in writing subscribed by the party to be charged".

The novel question presented in this case is, when the "party to be charged" is a partnership, rather than a corporation, is the signature of an "officer" sufficient to bind the partnership to an agreement, or is such an officer merely an "agent" of the partnership, requiring written authority to enter into such an agreement?

At the outset of this discussion, we of course acknowledge a significant difference between partnerships and corporations: whereas the acts of corporate officers are generally deemed to be the acts of the corporation itself, partners act as agents of the partnership for most business purposes.

New York's Partnership Law provides: "The law of agency shall apply under this chapter", and "[e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner,

* * * binds the partnership * * *." N.Y. Partnership Law §§ 4, 20 (McKinney 1948).

Nevertheless, notwithstanding a partner's status as an "agent" of the partnership, each partner has the authority to bind the partnership and the specific authority to do so need not be in writing. *Fisk Bldg. Assocs. v. Continental Am. Ins. Co. of Delaware,* 80 Misc.2d 56, 69, 362 N.Y.S.2d 315, 320 (Civ.Ct., New York Cty.1974); *People v. Esrig,* 240 A.D. 300, 302, 270 N.Y.S. 372, 374 (3d Dep't 1934).

Although the New York courts have not yet specifically addressed the application of § 5–703(2) of the statute of frauds to partnerships, we conclude that written authority is not required when a partner who signs an agreement is acting within the scope of the partnership's usual business. We hold that the exception to the requirement of written authority that applies to corporate officers also applies to partners and any "officers" of partnerships, where such "officers" are generally authorized to conduct the business of the partnership, just as corporate officers are for the corporation. Contrary to Plaza's assertion that "[t]here is no such designation as a vice-president in the New York Partnership Law", the New York General Associations Law specifically provides for circumstances, unrelated to those presented in this appeal, under which partnerships are afforded different treatment by reason of their having an officer such as a "president or treasurer". *See* N.Y.Gen. Ass'ns Law § 13 (McKinney 1987). Thus, an agreement signed by a partner or an officer of a partnership is, for purposes of § 5–703(2), "in writing subscribed by the party to be charged". This exception applies equally to officers of any corporation that is itself a partner in a partnership.

Given this view of New York's statute of frauds, triable issued are presented as to the relationships among Carstens, Weiss, Plaza, E.W. Development Company, and I.K.S., Inc., and whether those relationships would trigger this exception to the statute.

4. *Cinema North's Equitable Arguments.*

Cinema North asserts that summary judgment should not have been granted on any of the three grounds discussed above, and also asserts two equitable arguments that would preclude Plaza from avoiding the agreement: (a) the proposal is binding on Plaza because of Cinema North's "part performance"; and (b) Plaza should be estopped from asserting its defenses to the contract under the statute of frauds because Cinema North relied to its detriment on misrepresentations by Plaza.

a. *Part performance.*

We agree with the district court that Cinema North failed to establish any facts from which a jury might conclude that its acts were "unequivocally referable" to the agreement, *Reisler v. 60 Gramercy Park N. Corp.,* 88 A.D.2d 312, 316, 453 N.Y.S.2d 186, 189 (1st Dep't 1982); *see Tuttle, Pendelton & Gelston v. Dronart Realty,* 90 A.D.2d 830, 831, 455 N.Y.S.2d 830, 831 (2d Dep't 1982), and thus failed to establish part performance of the agreement that could take it out of the statute of frauds.

b. *Estoppel.*

Cinema North's second equitable argument that, even if Carstens lacked written authority to bind Plaza, Plaza should be estopped from avoiding the obligations of the agreement, has more merit. To establish estoppel under New York law, Cinema North must show that Plaza misrepresented the facts expecting Cinema North to rely on its misrepresentations, and that Cinema North justifiably relied to its detriment on these misrepresentations. *Christian Dior–New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 37 (2d Cir.1986); *see Nassau Trust Co. v. Montrose Concrete Prod.,* 56 N.Y.2d 175, 183–84, 436 N.E.2d 1265, 1269–70, 451 N.Y.S.2d 663, 667 (1982). Plaza may also be prohibited from raising the defense of the statute of frauds altogether, because the statute of frauds may not be used to effect a fraud.

While defendants assert categorically that Carstens was neither a partner of Plaza nor an officer of I.K.S., Inc., the fact remains that he did sign the proposal as "Vice President" and Carstens' dubious explanation that he did so "carelessly" warrants evaluation by a jury. There remain outstanding issues of fact and credibility regarding the relationships among Carstens, Weiss, Plaza, I.K.S., Inc. and E.W. Development Company. Cinema North may be able to prove that Weiss, Plaza's only general partner, knew that Carstens was holding himself out as the "Vice President" of Plaza, knew that Carstens did not have written authority to bind the partnership, and intended for Cinema North to rely on Carstens' misrepresentations.

Cinema North's descriptions of its expenditures and lost business opportunities are sufficiently specific to raise a genuine issue of fact as to whether or not Cinema North relied to its detriment on the alleged misrepresentations by Plaza. Cinema North should be given an opportunity to prove at trial that Plaza knew of the misrepresentations Carstens was making in its name and that Cinema North reasonably relied on these misrepresentations to its detriment.

Cinema North has also raised factual questions about whether or not Weiss has deliberately constructed his business organizations so that his employees might conduct negotiations and draft and even sign agreements sufficient to bind the other party, while, because of the statute of frauds requirement that an agent who signs an agreement must be authorized to do so in writing, Weiss and Plaza would not be bound until the last moment when the deal is formally closed and signed by Weiss himself. If Cinema North proves such an arrangement at trial, the district court could, in the exercise of its equitable discretion decline to enforce the statute of frauds for "equity will not permit the statute of frauds to be made an instrument of fraud". *Canda v. Totten,* 157 N.Y. 281, 288, 51 N.E. 989 (1898); *see also Wilson v. LaVan,* 22 N.Y.2d 131, 140, 291 N.Y.S.2d 344, 352, 238 N.E.2d 738, 744 (Bergen, J., dissenting) (1968).

## III. CONCLUSION

Because there are disputed, material questions of fact, we reverse the grant of summary judgment and remand for further proceedings. We also reverse the dismissal of Cinema North's claim against Hoyt's, since this dismissal was based only on the district court's determination that there was no enforceable contract between Plaza and Cinema North.

REVERSED AND REMANDED.